WESTERN UNION TELEGRAPH COMPANY v. HARRIET L. MICHEL.

163 So. 86.

Division B.

Opinion Filed February 19, 1935.

On Rehearing September 21, 1935.

512

*J. Julien Southerland,* for Petitioner;

*Rosenhouse & Rosenhouse* and *Harry Gordon,* for Respondent.

TERRELL, J.—The respondent, Harriet L. Michel, recovered a judgment against the petitioner for personal injuries in the Civil Court of Record for Dade County. On writ of error to the Circuit Court the judgment was affirmed. This Court is now importuned to review that judgment on certiorari.

These are the pertinent facts which gave rise to this case: Petitioner had a branch office at Little River, Florida (a suburb of Miami) in charge of Mrs. A. A. Muller. Curtis Long, eighteen years old, was messenger boy and furnished his own motorcycle with which he delivered messages for petitioner to customers in a designated territory in the City of Miami. Long was required to be on duty from 8:30 A. M. to 5:00 P. M. each day and was allowed thirty minutes for lunch, during which time he was not subject to the order of petitioner, but could go when and where he pleased.

On May 21, 1930, Long was given two messages to deliver by Mrs. Muller at 10:56 A. M. He delivered these messages promptly, but as soon as they were delivered, instead of returning to the office of petitioner as he was expected to do, he went to his home for lunch, a distance of nine miles from his territory. As he was returning to the office of petitioner after his lunch when proceeding across Flagler Street at 27th Avenue he struck a Chevrolet coupe in which respondent was riding, turning it over and injuring her. She brought a common law action and received the judgment we are called on to review.

The respondent contends that the judgment below cannot be reviewed by certiorari. The answer to this question is found in Atlantic Coast Line R. R. Co. v. Florida Fine

Fruit Co., 93 Fla. 161, 112 So. 66, where we held that in cases coming to this Court pursuant to Section 3322, Revised General Statutes of 1920, where the probative force of the evidence affects the jurisdiction of the Court or where it is so manifestly contrary to the finding that is made on it as to show a palpable abuse of the power to determine the controverted facts on the evidence or where the finding clearly indicates that the evidence was not duly considered or an erroneous rule of law was observed in making the finding or where there was serious misconduct involved in the findings, and material injury to the petitioner resulted therefrom, the Court may in the exercise of its sound discretion consider such matters and take appropriate action thereon in order that law and justice may prevail. Ulsch v. Mountain City Mill Co., 103 Fla. 932, 138 So. 483, 140 So. 218. In our discussion of the questions brought up for solution we will be controlled by the rule as thus stated, which is somewhat liberal.

On the facts as here delineated the trial court charged the jury as follows:

"You are charged, gentlemen of the jury, whether in a particular instance a servant who negligently causes injury to a stranger was acting within the scope of his employment is a question of fact for the jury, if there is a conflict of facts. But in this case the undisputed testimony is that the messenger was returning from his home after partaking of a meal, to his place of duty in Little River, Florida, and therefore I charge you, gentlemen of the jury, that the messenger at the time was within the scope of his employment and the responsibility of the defendant, the Western Union Telegraph Company, attached immediately to the messenger having accomplished the errand on behalf of himself, that of procuring his dinner, and if you believe

that the messenger through his negligence caused the injury complained of by the plaintiff, then it would be your duty to find for the plaintiff and assess damages in such sum as you think proper to compensate the plaintiff for all her injury."

The giving of said charge is one of the errors complained of.

In our view this charge was clearly erroneous and contrary to the essential requirements of justice. It was vague and confusing, it invaded the province of the jury, and in effect announced that the messenger in leaving his employment and going home for lunch was guilty of a mere slight departure from rather than an abandonment of his master's business. We have examined other charges complained of and find them to be misleading and in some cases incorrect statements of law, but will not discuss them in detail.

Questions four and five complain of certain testimony elicited from the plaintiff and the plaintiff's witness, R. A. Phillips. The testimony of the plaintiff complained of was prejudicial and should not have been admitted as it was no part of the *res gestae* which it was offered to support. The testimony of Phillips should not have been admitted because it was designed to or could have no other effect than to impeach the testimony of Curtis Long. No predicate was laid for his impeachment and the testimony was otherwise prejudicial. We refrain from further discussion of these questions here because to do so would serve no useful purpose as the judgment must be quashed for other reasons.

It is next contended that the judgment and verdict below invaded the essential requirements of law because the motorcycle on which Curtis Long was riding at the time of the accident belonged to him. (Long) and even though it

was a dangerous instrument, petitioner cannot be held for injury done with it.

Under the facts in this case we do not consider the ownership of the motorcycle material. It could not be considered dangerous *per se* like dynamite, gunpowder, electricity, and such like substances, but when negligently used it is potentially dangerous. In the case at bar it is shown that the motorcycle belonged to Long and that it was maintained and operated by him in the interest of petitioner. The defendant was aware of this, knew that Long was using the motorcycle to deliver telegrams for it, acquiesced in such use, and under such state of facts will not now be relieved of liability for injury done by it on that ground. If the motorcycle was being used in the business of the defendant with its knowledge and consent it cannot avoid liability for the negligent use of it. Wolfe v. City of Miami, 103 Fla. 774, 134 So. 539, 103 So. 892.

The concluding and primary question argued here is whether or not when the defendant's employee, Long, left his master's business and went home to lunch he was guilty of a mere slight deviation from the master's business or did his conduct in so departing amount to an abandonment of and the undertaking of a project that had no relation to his master's business.

The rule is well settled that the master is responsible for the torts committed by his servant in the scope or range of his employment. He is also liable for those committed in a slight deviation or departure from his business, but when the deviation or departure of the servant amounts to an abandonment of the master's business and the undertaking of an enterprise or mission of his own without the master's consent, knowledge, or approval and having no relation to the master's business, then the master cannot be held

liable for torts so committed. Barmore v. Vicksburg, S. & P. R. Co., 85 Miss. 426, 38 So. 210, is one of the leading cases in the country on this point and is very instructive on the subject. See also Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629; Warner v. Goding, 91 Fla. 260, 107 So. 406; Florida East Coast Ry Co. v. Anderson, 110 Fla. 290, 148 So. 552; Dowdell v. Beasley, 205 Ala. 130, 87 So. 18; Crady v. Greer, 183 Ky. 675, 210 S. W. 167; Jackson v. DeBardelaben, 22 Ala. App. 615, 118 So. 504.

In the last cited case the Alabama Court approves the rule supported by numerous authorities to the effect that in cases where the deviation is slight and not unusual the Court may as matter of law determine that the servant was still about his master's business. So, too, where the deviation is very marked and unusual, the Court in like manner may determine that the servant was not on the master's business, but on his own.

This Court has approved the rule that the deviation from the express or well implied authority of the master on the part of the servant might be so slight that it was a question for the jury to determine under appropriate instructions whether or not such deviation amounted to such a departure as to remove it from what the master knew to exist and had frequently assented to. Warner, *et al.,* v. Goding, *supra.*

The departure complained of here was not so slight as to bring it within the rule announced in the last cited case. The question then recurs on whether or not the facts as stated constituted an abandonment of the master's business or a mere incidental departure from it, or in the light of the facts presented are we required to settle this question.

It is undisputed that Curtis Long, the servant, was re-

quired to be on duty from 8:30 A. M. to 5:00 P. M., during which time he was given thirty minutes for lunch in which he could go where he pleased. Apparently no time certain was fixed for lunch period, but it was generally taken at the direction of the agent of relator. At the time the accident in question occurred Long went to his lunch a distance of nine miles from his territory without the consent or knowledge of the defendant and while returning to his work the accident occurred. He was permitted to use his motorcycle in going to and returning from lunch the same as when in the service of his master and frequently went home for this purpose.

Under the facts as presented it becomes unnecessary to decide whether or not the servant, Long, was acting within the scope of his employment at the time of the accident resulting in respondent's injury. He was with the knowledge and consent of his master permitted the custody and use of a dangerous instrument in the transaction of his master's business and being so the master cannot avoid responsibility for injuries inflicted in the operation thereof on the ground that in the commission of the act complained of the servant was acting outside the scope of his authority.

In Pittsburgh C. & St. L. Ry. Co. v. Shields, 47 Ohio St. 387, 24 N. E. 658, 8 L. R. A. 464, it was held that if the master entrusts the custody of dangerous agencies to his servants, the proper custody as well as the use of them becomes a part of the servant's employment by the master, and his negligence in any regard is imputed to the master in an action by one injured thereby. And when the injury results from the negligence of the servant in the custody of the instrument, it is immaterial, so far as the liability of the master is concerned, as to what use may have been made of it by the servant.

It is further held in the last cited case that the servant cannot depart from the duty entrusted to him when that duty regards the rights of others in respect to the employment of dangerous instruments by the master in the prosecution of his business without making the master liable for the consequences. This rule is limited to cases where agencies liable to be the means of inflicting serious injury upon others are placed in the hands of servants.

It would not necessarily apply to cases where a servant was entrusted with such an instrumentality for a particular purpose and departed to undertake a mission of his own without the master's knowledge or consent. The rule was designed to protect the public and is peculiarly applicable to this case where a dangerous instrumentality is used to effect the business for which the servant is employed. It is not abrogated by the fact that the instrumentality belonged to the servant when it was used indiscriminately with the knowledge and approval of the master in the prosecution of his business.

It follows that the judgment of the Circuit Court affirming the judgment of the Civil Court of Record must be and is hereby quashed. The Circuit Court should have reversed the judgment of the Civil Court of record for the reasons herein enumerated with directions to grant a new trial.

Judgment quashed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., concurs specially.

BROWN, J. (concurring specially).—I concur in the judgment, and also in all of the able foregoing opinion save the last five paragraphs, which, as I see it, unduly expound the

doctrine of *respondeat superior* as heretofore construed by this Court in Warner v. Goding, 91 Fla. 260, 107 So. 406, and other cases decided by this Court, as well as in the Alabama case cited of Dowdell v. Beasley, 205 Ala. 130, 87 So. 18.

## ON REHEARING.

PER CURIAM.—After oral argument and due consideration upon rehearing a majority of the Court hold to the view that our former opinion and judgment in this case should be adhered to. The judgment as entered on the original hearing will, therefore, stand.

Judgment quashed on rehearing.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.