Edwin A. KUNKLER and Evelyn Kunkler, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18751.

United States Court of Appeals Fifth Circuit.

Oct. 24, 1961.

Rehearing Denied Dec. 29, 1961.

M. Howard Williams, of Williams & Owen, Tallahassee, Fla., for appellants.

Edward L. Stahley, Asst. U. S. Atty., Wilfred C. Varn, U. S. Atty., Tallahassee, Fla., C. W. Eggart, Jr., Acting U. S. Atty., Pensacola, Fla., for appellee.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Edwin A. Kunkler received serious personal injuries, and the automobile of appellant Evelyn Kunkler driven by him was damaged in a collision between that car and one driven by USAF Airman 3/C James Monaghan,[1] which occurred April 1, 1959 near Quincy, Florida. They brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), § 2671 et seq. Based upon the complaint, the answer and written stipulations between the parties with the exhibits thereto, the court below granted summary judgment in favor of the United States, appellee. The correctness of that action is before us on this appeal.

The trial court wrote an opinion in which it demonstrated its grasp of the crucial facts and of the legal principles controlling.[2] We think that the court correctly decided the issues before it and, on the basis of its opinion with a few added comments, we affirm.

For convenience, we quote the opening paragraph of the lower court's opinion as a brief epitome of the salient facts:

"The undisputed facts here appear in stipulations filed September 26, 1960 and October 6, 1960. The pertinent portions are summarized. On March 17, 1959, United States Airman James Monaghan departed his assignment at Keesler Air Force Base, Mississippi, pursuant to orders on official 'delay en route' leave status to report not later than 2400 hours, April 2, 1959, to an Air Force School in Montgomery, Alabama. The Airman traveled to St. Albans, Vermont, where he purchased the automobile subsequently involved in this action. From Vermont he drove to DeLand, Florida, where he visited for sometime with his grandparents. On April 1, 1959, he was driving to his new base when collision occurred between his automobile and plaintiffs' automobile near Quincy, Florida, within this District. This accident is the basis of this litigation. Thus, on the Government's motion for summary judgment one issue is presented. Was the Airman within the scope of his employment at the time of the accident?" [187 F.Supp. 817.]

A large number of decisions have been rendered in cases involving accidents by servicemen traveling in connection with changes in their assignments. Opposite results have been reached by many courts, both because of the facts involved in the many cases and the differences in the laws of the several states in which they have arisen. The court below took note of this and quoted (187 F. Supp. 817) the distillation of the rule which appeared in an extended note in A.L.R.:

"Where the travel was between assignments of some permanence, at widely separated geographical points, it has usually been held that the employee was not acting for his employer in traveling."

Monaghan's "master" or "principal" ordered him to travel from Biloxi, Mississippi, a distance of approximately 250 miles in a northeasterly direction to Montgomery, Alabama, obviously basing

---

1. Who was killed in the accident.

2. Kunkler et al. v. United States of America, D.C.N.D.Fla.1960, 187 F.Supp. 816.

The trial judge was an experienced Florida lawyer, and the application of Florida laws largely determined the decision of this case.

the allowance on one day's pay on the estimate that this distance could be traversed within the limits of a day. Monaghan was also granted "delay en route" in order that he might use up some of his accrued leave. Instead of going direct to Montgomery, he chose, as was his right, to go first to his home in Vermont. After buying a car there, he drove to DeLand, Florida to visit his grandparents. When he left DeLand for Montgomery, he was about 456 miles from his destination and about thirty-seven and one-half hours from his reporting time at Montgomery. The place of the accident was about 263 miles northwest of DeLand, about 193 miles southeast of Montgomery, and about 270 miles east of his starting point, Biloxi, Mississippi. From Biloxi to Montgomery by the route actually taken by the Airman the distance was about ten times the 250 miles the United States had fixed as travel distance, a fact which was well known to him at the time he signed out at Biloxi. The deviation was, we think, more than slight with respect both to distance and to time.

The parties agree that Florida has no case on all fours with this one. Appellants rely chiefly on a case which the court below cited as one of those upon which its decision was largely based.[3] The appellee also places heavy reliance upon the Michel case. We think that the court below correctly interpreted its holding as giving support to its decision in favor of appellee.

Appellants also cite with confidence our decision in Hinson et al. v. United States, 6 Cir., 1958, 257 F.2d 178. That case was governed by Georgia law, and its facts differentiate it from those before us here. There, the army officer was traveling within the time allotted, upon a route as direct as any he could have taken—for aught that appears to the contrary—and was doing precisely what his principal, the United States, had directed that he do and was doing it in the way the parties contemplated. No question of deviation was involved. We discussed in Hinson's case many of the authorities on both sides of the question before us, and we properly concluded that the officer was acting within the scope of his employment at the time of the accident. But every case must be decided upon its own facts, and the facts of Hinson's case are not controlling here. We find no case directly in point on its facts, and no good purpose would be served by discussing any of the multitude of cases from other courts. The varied results reached arise, not so much from diverse notions concerning legal principles, but from the great difference in the factual situations presented

Affirmed.

---

3. Western Union Telegraph Co. v. Michel, 1935, 120 Fla. 511, 163 So. 86. Appellants also rely on Atlantic Coast Line R. Co. v. Burquest, Fla.App.1958, 101 So.2d 828; Bowen v. Keen, 1944, 154 Fla. 161, 17 So.2d 706; Weiss v. Jacobson, Fla.1953, 62 So.2d 904; and Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255.