**O. L. DETTMERING**

v.

**UNITED STATES of America.**

**No. 860.**

United States District Court
N. D. Georgia,
Newnan Division.

Dec. 30, 1969.

Sanders, Mottola & Haugen, Newnan, Ga., Charles Ballard, Fayetteville, Ga., for plaintiff.

Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

The question before the court is whether a civilian employee of the Department of the Army, traveling in her own private automobile from her duty station to an annual leave address for a purpose entirely personal in nature, before traveling to Washington, D. C., for temporary duty, by commercial airlines, can be said to be within the "scope of her employment", under the Federal Tort Claims Act, and the Georgia doctrine of respondeat superior. The court holds that, under these circumstances, such a civilian employee is not within the "scope of her employment", within the meaning of Georgia law.

Plaintiff Dettmering filed a suit against the United States of America, alleging that Miss Virginia H. Hollowell was a member of the Womens Army Corps of the United States of America, proceeding under orders of the Department of the Army, on official business of the Army at the time of the accident. It was alleged that, on August 15, 1966, Hollowell negligently struck Dettmering on a sidewalk in Fayetteville, Fayette County, Georgia, causing considerable injury, in the amount of $5,000.00. The government answered, denying that Hollowell was in the Army, but alleging that she was a civilian employee of the Department of the Army, and not within the scope of her employment at the time of the accident, but on a leave status at that time. The government then moved for summary judgment, basing its motion on the affidavit of Miss Hollowell and the Time and Attendance Report UPAR 37–105 of Miss Hollowell.

In essence, Hollowell's affidavit stated that on August 15, 1966, she departed Fort Benning, Georgia, at approximately 2:00 or 3:00 P.M. Her destination was Washington, D. C., and she was to attend a three day briefing there, pursuant to official orders, to prepare her for a coming tour in Viet Nam. She stated:

> (While my leave record indicates that I was on annual leave the entire time I was absent, I was supposed to have been traveling on Administrative Leave until such time as I reached my immediate destination, which was Elizabeth City, North Carolina, where I planned to take some annual leave).

It was while she was driving from Fort Benning to Elizabeth City, North Carolina, that the accident occurred. Hollowell arrived in Elizabeth City on August 17, 1966, and remained there until August 28, 1966. She traveled to Washington, D. C., by commercial airlines from Elizabeth City. In her affidavit, she states:

> The purpose of the visit to Elizabeth City was entirely personal in nature, to allow for a visit with various of my relatives in that area, and also

to allow for a business transaction concerning my personal automobile, necessary prior to my departure to Viet Nam.

Miss Hollowell's Time and Attendance Report (AR 37–105) demonstrates that, on August 15, 1966, she worked five regular hours and was charged with three hours of annual leave on that day, plus eight hours of annual leave for the four days following, August 16 through August 19, 1966.

In addition, the government has filed in support of its motion for summary judgment, the Supplemental Affidavit of Blondy B. Fluharty, Chief, Civilian Pay Branch of the Finance and Accounting Office of Fort Benning, Georgia, which reiterates the information furnished on Hollowell's Time and Attendance Report. In addition, the affidavit states that during the period from August 15, 1966, to August 19, 1966, Miss Hollowell was " * * * not charged with administrative leave. Her records indicate only travel time, work time, or annual leave time."

The government urges that under these facts, Miss Hollowell was not within the scope of her employment at the time of the incident, requesting that its motion be granted. Plaintiff has not responded to the government's motion, either on the occasion of the original motion or on the occasion of the Supplemental Affidavit.

The pertinent provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671, provide that the district courts shall have exclusive jurisdiction of civil actions on claims for damages for the negligence:

* * * of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

Because the accident occurred in Georgia, the court examines the controlling Georgia state statute:

Every person shall be liable for torts committed by * * * his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary.

Ga.Code Ann. § 105–108 (1968).

In essence, the question to be answered here is whether Miss Hollowell was prosecuting the business of her employer at the time of the alleged incident. The record reflects that, at the time of the incident, she was en route to Elizabeth City, North Carolina, for a visit with relatives, and to conduct a business transaction concerning her personal automobile. She characterized the purpose of her visit as "entirely personal".

The case of Sparks v. Buffalo Cab Co., 113 Ga.App. 528, 148 S.E.2d 919 (1966), affirmed summary judgment for the defendant cab company, where the employee had left his employment at 3:00 P.M. one day, had driven from Atlanta to Douglasville, Georgia, to visit his parents and children, spent the remainder of the day and that night in Douglasville, and had a collision on the return trip to Atlanta, early in the evening of the next day. He did not intend to return to his job until the day after the collision. (Although the opinion does not so state, the employee was apparently driving his cab at the time of the collision.) *Accord*: Fielder v. Davison, 139 Ga. 509, 77 S.E 618 (1913) (directed verdict for employer where chauffeur took joy ride); Eason v. Joy Floral Co., 34 Ga.App. 501, 130 S.E. 352 (1925); Holland v. Cooper, 192 F.2d 214 (5th Cir. 1951); McGuire v. Gem City Motors, Inc., 296 F.Supp. 541, 543 (N. D.Ga.1969). Similarly, Hollowell was traveling to Elizabeth City for "entirely personal" reasons. Accordingly, the court might base its judgment on these Georgia cases and grant summary judgment for the defendant.

However, even more pertinent are two Fifth Circuit cases which construe the Georgia law of respondeat superior in the context of a military man traveling under orders to his duty station: Hinson v. United States, 257 F.2d 178 (5th

Cir. 1958) and Kunkler v. United States, 295 F.2d 370 (5th Cir. 1961). In *Hinson*, Captain Westcott, an Army medical officer, was traveling from his home to his first duty station, in his own private automobile, under direct orders, with appropriate pay and allowances. The court considered that the indifference of the Army to the means used by Westcott in traveling was of no importance in the case; what was important was the fact that the Army could have directed the means by which Westcott traveled. Also significant was Westcott's accountability to the Army for all of his actions, under the Uniform Code of Military Justice, from the date of his entrance upon active duty. See Johnston v. United States, 310 F.Supp. 1, N.D.Ga., Civil Action No. 11247 (order entered September 29, 1969). There was no evidence of any deviation by Westcott from his orders.

In contrast, the *Kunkler* facts were that United States Airman James Monaghan left his assignmemt at Keesler Air Force Base, Mississippi, pursuant to orders to travel to an Air Force school in Montgomery, Alabama. However, Monaghan's orders authorized him to "delay en route" for a leave period of approximately two weeks. Consequently, he traveled to St. Albans, Vermont, where he purchased the automobile involved in the collision. From Vermont, he drove to DeLand, Florida, where he visited with grandparents. It was while traveling to his duty station, at the end of his leave period, that the accident occurred near Quincy, Florida. The court distinguished the *Hinson* case on its facts, as follows, in pertinent part:

> There, the army officer was traveling within the time allotted, upon a route as direct as any he could have taken —for aught that appears to the contrary—and was doing precisely what his principal, the United States, had directed that he do, and was doing it in the way the parties contemplated.

No question of deviation was involved. 295 F.2d at 372. The court based its opinion on Monaghan's "deviation" from his route from Keesler AFB to Montgomery, noting that he had been allowed one day's pay as travel allowance on the estimate that the two points could be traversed within the limits of one day.

However, there are several distinguishing factors as between both *Hinson* and *Kunkler* and the instant case. First, Hollowell was not under travel orders, as evidenced by the affidavit of Fluharty. She received no compensation for travel with her private automobile. During the period of the incident, she was on an annual leave status. This one fact is similar to *Kunkler*, in that Monaghan was also on annual leave. Despite Hollowell's statement that she " * * * was supposed to have been traveling on Administrative Leave until such time as [she] reached [her] intermediate destination, which was Elizabeth City, North Carolina * * *", the affidavit of Fluharty conclusively establishes that Hollowell was not on Administrative Leave.[1] Moreover, she was a civilian employee, not a military person, and there was no control over her every action, under the Uniform Code of Military Justice, as existed in *Hinson* and *Kunkler*.

The facts of the case have convinced the court that Hollowell's journey to Elizabeth City was for personal reasons, and that her negligent conduct, if any, should not be imputed to the United States under the Georgia doctrine of respondeat superior.

Therefore, the court holds that Hollowell's negligent conduct, if any, cannot be imputed to the United States, under the Georgia doctrine of respondeat superior. Accordingly, the government's motion for summary judgment is hereby granted against the plaintiff. Let the government submit an appropriate judgment to the clerk for execution.

1. Even if the fact of Administrative Leave were sufficient to establish the agency relationship desired by plaintiff, Hollowell's "supposed to be" statement could not establish that fact.